1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT ANTONIO ROMERO,                     No. C 10-2693 SI (pr)

          Petitioner,               **ORDER DENYING PETITION FOR**
                        **WRIT OF HABEAS CORPUS**

    v.

RAUL LOPEZ, Warden,

          Respondent.
_____/

**INTRODUCTION**

      This matter is now before the court for consideration of the merits of Robert Antonio Romero's <u>pro se</u> petition for writ of habeas corpus concerning his conviction in the Alameda County Superior Court.  For the reasons discussed below, the petition will be denied.

**BACKGROUND**

      An Alameda County jury convicted Romero of one count each of carjacking (Cal. Penal Code § 215(a)), robbery (<u>id.</u> § 211), assault with a firearm (<u>id.</u> § 245(a)(2)), shooting at an unoccupied motor vehicle (<u>id.</u> § 246), and possession of a firearm by a felon (<u>id.</u> § 12021(a)(1)). The jury also found true the allegation that Romero personally and intentionally discharged a firearm during commission of the crimes, causing great bodily injury.  Cal. Penal Code §§ 12022.5(a)(1), 12022.7(a), 12022.53(b),(c)&(d).  At a non-jury trial on alleged enhancements, the trial court found true allegations that Romero had served two prior prison terms.  Cal. Penal Code § 667.5.  The court sentenced Romero to thirty-one years and eight months in prison.

Romero appealed. The California Court of Appeal affirmed the conviction in a reasoned opinion. The California Supreme Court denied Romero's petition for review. He then filed this federal petition for writ of habeas corpus.

The following statement of facts is taken from the opinion of the California Court of Appeal.

The victim, James Henderson, first met defendant - who he knew as "Bobo" - in early 2006. The two men discussed the types of crimes each committed. Henderson said that he stole change from gas station air and water vending machines and sold drugs. Defendant indicated that he engages in carjacking.

Less than a week later, defendant called Henderson and asked him to help sell a television. According to Henderson, defendant agreed to give him a laptop computer for his help. Henderson also agreed to give defendant some car speakers if defendant got him some drugs. They spent the day trying to sell the television but were unsuccessful. The following day, Henderson and defendant argued over the phone about the laptop and speakers. Subsequently, defendant called Henderson several times and threatened him.

Around 2:00 p.m. on March 10, 2006, Henderson was sitting in the driver's seat of his van when two cars, one black and one silver, drove up and blocked his car. Defendant and two other men got out of the cars and ordered Henderson to get out of his van. When he refused, one of the men told defendant to shoot him. Defendant pulled a gun and shot Henderson through the van door, hitting him in his calf. Defendant put the gun to Henderson's head and again ordered him out of the car. After Henderson was out of the van, defendant drove it away.

Henderson knocked on a neighbor's door and called the police. In the 911 call he told the dispatcher that three or four men were involved, he described the cars that blocked his van as black and possibly silver, and he indicated that a third car, a red Honda, was also involved. When Henderson spoke with the responding officer, he said that his car had been stolen by a man he knew as "Bobo," who he described as a 26-year-old Hispanic male. He told the officers that "Bobo hangs out near 38th Avenue and Santa Rita." He did not mention the black or silver cars, but said that defendant was driving a "burgundy Honda." His written statement taken at the hospital later that day states, "Bobo, Hispanic, pulled up in a burgundy Honda. He told me I owed him two speakers in exchange for a laptop he had given me a week ago. Bobo and two other males Hispanics got out of this Honda."

In April 2006, Henderson was taken into custody for a probation violation and in jail saw defendant. He immediately told a deputy that defendant was the person who had shot him. At trial, Henderson admitted that he had prior felony convictions for auto theft, providing false information to an officer, possession of stolen property, and unlawful possession of a firearm. He also admitted that he sold narcotics.

Defendant, who said he was also known as "Bubba," testified in his own defense. He denied any participation in or knowledge of the March 10 incident. He believed that Henderson was falsely accusing him because he had "burned" him in a drug deal and owed Henderson $650. Defendant agreed essentially with Henderson's testimony regarding how they met and the day they spent trying to sell the television. He denied telling Henderson that he had committed carjacks and claimed that he never agreed to

2

give Henderson a laptop for his help selling the television.  Defendant also claimed that on the same day they were trying to sell the television, Henderson gave him some drugs and that he agreed to pay Henderson from the proceeds of the television sale.  Defendant never sold the television and did not pay Henderson for the drugs.

Defendant was arrested on March 15, 2006, while driving a maroon Honda that had been reported stolen.  When he encountered Henderson in jail, Henderson told him to have his family put some money in his jail account to pay for the drugs.  Defendant laughed at him.  Defendant admitted that he had a prior conviction for selling marijuana and a prior conviction for auto theft.  Defendant also admitted that he had previously given a false name to the police and had been incarcerated as a juvenile.

Defendant's girlfriend testified that on March 10, 2006, she was working and defendant was watching their child.  She had a silver Toyota in which defendant drove her to work that day.  She testified that defendant purchased the maroon Honda about one month before he was arrested.

Resp. Exh. F (Opinion of the California Court of Appeal in People v. Romero, No. A119528 (Dec. 22, 2008)) at 2-3.

In the present petition, Romero brings the following claims for relief: the wrongful admission of other crimes evidence; the wrongful admission of evidence of gang affiliation; the wrongful admission of evidence of a prior conviction; ineffective assistance of counsel; cumulative error; and the use of erroneous sentencing procedures.[1]

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Alameda County, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim

---

[1]In the Order to Show Cause issued on December 21, 2010, this court dismissed four additional claims from the petition - three claims that raised only state law issues, and one claim on the merits.

United States District Court
For the Northern District of California

they seek to raise in federal court.  28 U.S.C. § 2254(b), (c).  State judicial remedies have been exhausted for the claims presented in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

Where constitutional error is found, habeas relief is warranted only if the error at issue had a "substantial and injurious effect on the verdict."  Penry v. Johnson, 532 U.S. 782, 796 (2001) (citation omitted).

1    In determining whether the state court's decision is contrary to, or involved an

2   unreasonable application of, clearly established federal law, the federal court looks to the

3   decision of the highest state court to address the merits of a petitioner's claims in a reasoned

4   decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir. 2000).  Here, the court looks to

5   the opinion of the California Court of Appeal , which was the highest court to address Romero's

6   claims in a reasoned decision.

7

8                              **DISCUSSION**

9   A.    Admission of Other Crimes Evidence

10   Romero claims that his federal constitutional right to a fair trial was violated when the

11   trial court allowed the admission of testimony that, five days after the carjacking, Romero was

12   arrested in possession of a maroon Honda that had been reported stolen ten days earlier.

13         1.    Background

14   At trial, the prosecutor moved to elicit testimony from Officer Kelly of the Oakland

15   Police Department that on March 15, 2006, five days after the carjacking incident, he arrested

16   Romero after learning that the 1995 four-door maroon Honda Accord Romero was driving had

17   been reported stolen ten days earlier, on March 5, 2006.  State Court Reporter's Transcript

18   (hereinafter "RT") 525:26-526:11.

19   Romero's defense counsel was willing to stipulate that Romero had been arrested for an

20   offense other than the one with which he was charged at trial and that he was driving the maroon

21   Honda. RT 527:9-14.  He objected, however, to admission of testimony that the Honda had been

22   reported stolen, arguing it was propensity evidence, irrelevant and highly prejudicial.  RT

23   527:25-528:2.

24   The prosecutor countered that Kelly's testimony that the car was reported stolen five days

25   before the carjacking and Romero told Kelly he had owned the car for a week was relevant to

26   show that Romero could have been in possession of the car on the day of the carjacking.  RT

27   529:22-530:25.

28   The trial court rejected the defense's challenge, finding the evidence was not being

**United States District Court**
For the Northern District of California

5

offered as propensity evidence, but, rather, to explain why Kelly arrested Romero, RT 528:3-4, which was relevant to explain why Romero was seen by Henderson at the county jail.  RT 529:11-15.  The court, however, denied the prosecutor's request to allow the admission of Romero's statement to Kelly that he had owned the car for a week, reasoning as follows:

> You know what, I think that leads to too much speculation.  I'm going to leave it. It was reported stolen on March 5th, '06, and he was stopped in it on March 15th.  And that's the Honda Accord, maroon.  I think that's plenty on that, otherwise we're going to get into he said she said.  But at least that portion of it is factual, the officer arrests him, he's taken in and from that point Mr. Henderson actually sees him in custody.

RT 531:2-9.

Subsequently, on direct examination, Kelly testified that on March 15, 2006, he took an interest in the maroon Honda when he saw the driver change direction after looking Kelly's way. Kelly "thought that was strange," so he punched the vehicle's license plate number into his computer to get the "status" of the car.  RT 606:10-14.  Because the information was slow in coming, Kelly eventually decided to stop following the car.  But, just as he turned to go in the other direction, the car  "popped up as stolen" on his computer.  RT 608:3-4.  He then picked up his radio and reported that he "just lost a stolen car in this vicinity," together with a description of the car and the driver.  RT 608:7-9.

At that point in Kelly's testimony, defense counsel asked the court for "an admonition to the jury as far as hearsay information that the car is stolen.  That's not being admitted for the truth, but to explain the officer's action."  RT 608:10-13.  The court responded: "To explain the officer's action.  All right."  RT 608:14-15.  Subsequently, the court instructed the jury with CALJIC 2.09 - Evidence Limited as to Purpose, which provides as follows:

> Certain evidence was admitted for a limited purpose.
>
> At the time this evidence was admitted you were instructed that it could not be considered by you for any purpose other than the limited purpose for which it was admitted.
>
> Do not consider this evidence for any purpose except the limited purpose for which it was admitted.

State Court Clerk's Transcript (hereinafter "CT") 136.

On appeal, Romero argued that Kelly's testimony that the car was reported stolen should

have been excluded under California Evidence Code section 1101, which prohibits the admission

of propensity evidence, and California Evidence Code section 352, which allows the trial court

to exclude evidence that is more prejudicial than probative.  The California Court of Appeal

rejected these arguments, reasoning as follows:

> In the trial court, defendant argued that evidence that he allegedly committed another crime was both irrelevant and inadmissible under Evidence Code section 1101, subdivision (a), which provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." FN2  Evidence Code section 1101 is not applicable here, however, because the testimony that the Honda had been reported stolen was not admitted for the truth of the matter or to prove that defendant committed the carjacking in question.  The evidence was admitted for the limited purpose of explaining why defendant was stopped by the police and arrested.
>
> FN2. No argument is made that the testimony was properly admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident under Evidence Code section 1101, subdivision (b).
>
> The explanation for the arrest removed any suggestion that defendant was being arrested for the offense being tried.  Assuming that the reason for the arrest was only marginally relevant, the admission of this evidence was not unduly prejudicial. The court admonished the jury that the evidence that the car was reported stolen was admitted only "[t]o explain the officer's action."  The jury was instructed pursuant to CALJIC No. 2.09 "not [to] consider this evidence for any purpose except the limited purpose for which it was admitted."  We presume that the jury followed the admonition and considered the evidence only for the permissible purpose.  (People v. Houston (2005) 130 Cal.App.4th 279, 312.)  More importantly, defendant acknowledged numerous prior criminal offenses (including auto theft; see section 3, infra) and claimed in his defense that Henderson fabricated the carjacking story to punish him for stealing his drugs.  In light of this defense, it is highly unlikely that the jury was improperly swayed by his possession of a stolen vehicle.  We cannot say that the refusal to exclude this testimony under Evidence Code section 352 was an abuse of discretion.

Exh. F at 4-5.


2.    Analysis

The admission of evidence is not subject to federal habeas review unless a specific

constitutional guarantee is violated or the error is of such magnitude that the result is a denial

of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021,

1031 (9th Cir. 1999).

Romero's first contention is that Kelly's testimony that the car had been reported stolen

denied him a fair trial because it was admitted solely to show his propensity to commit crimes.

7

The United States Supreme Court has left open the question whether the admission of propensity evidence can violate due process. <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 n. 5 (1991).  For purposes of federal habeas corpus review under 28 U.S.C. § 2254(d)(1), "[i]f Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law."  <u>Ponce v. Felker</u>, 606 F.3d 596, 604 (9th Cir. 2010) (citation omitted).  Consequently, habeas relief is not available to Romero on this ground. <u>See</u> <u>Larson v. Palmateer</u>, 515 F.3d 1057, 1066 (9th Cir. 2008) (holding that because Supreme Court expressly reserved question whether propensity evidence could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law).

Similarly, with respect to Romero's second contention that the evidence should have been excluded because it was irrelevant and unduly prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009).  Thus, there is no established Supreme Court precedent governing whether the admission of irrelevant or prejudicial evidence constitutes a due process violation, and, therefore,  federal habeas relief under 28 U.S.C. § 2254(d)(1) is not available based upon a claim of admission of irrelevant evidence.  <u>See</u> <u>id.</u> at 1101  (finding trial court's admission of irrelevant evidence was "fundamentally unfair" under Ninth Circuit precedent, but not contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)).

Alternatively, even if the admission of propensity or irrelevant evidence can violate due process, Romero's claim is without merit because he fails to show that the trial court's ruling rendered the trial fundamentally unfair.  In general, reviewing courts have held that admission of prior bad act testimony does not violate due process where the trial court balanced probative weight against prejudicial effect, and gave the jury appropriate cautionary instructions. <u>See, e.g.</u>, <u>Houston  v. Roe</u>, 177 F.3d 901, 910 n.6 (9th Cir. 1999); <u>Terrovona v. Kincheloe</u>, 912 F.2d 1176, 1180-81 (9th Cir. 1990); <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir. 1990).  Here, the record shows that the trial court, in deciding to admit the contested evidence, balanced its probative weight against its prejudicial effect and gave the jury a limiting instruction, which it is presumed

to have followed.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000) (holding jury is presumed to have followed court instructions); Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997) (accord).

Moreover, it is not reasonably probable that admission of the evidence had a substantial and injurious effect on the jury's verdict.  As noted by the California Court of Appeal, Romero, when testifying in his own defense, acknowledged several prior criminal offenses - including a prior conviction for auto theft - and his theory of defense was that Henderson fabricated the carjacking story to get back at him for stealing Henderson's drugs.  In view of this record, there is no reasonable likelihood that the jury's verdict would have been different had the contested evidence been excluded.

For the foregoing reasons, the court finds that the state courts' rejection of Romero's due process challenge to the trial court's admission of evidence that that the maroon Honda had been reported stolen was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Romero is not entitled to habeas relief on this claim.

B.    Admission of Testimony Implying Gang Affiliation

Romero claims that his federal constitutional right to a fair trial was violated when, in violation of a court order, testimony was elicited from Henderson from which the jury could infer that Romero was a gang member.

1.    Background

The California Court of Appeal summarized the pertinent facts as follows:

> Prior to trial, the court granted defendant's motion to exclude evidence of defendant's membership or association with a gang.  Defendant contends he was denied his right to a fair trial when Henderson violated the court's pretrial order during his testimony by using "'gang-related' words and innuendo that could only convey to reasonable juror that [defendant] was a gang member."  On cross-examination, Henderson was asked about some repair work on his van and where his friend who had made the repairs worked.  Henderson refused to answer, citing "safety reasons."  Henderson also refused to answer the defense attorney's questions about where he had been living after the carjacking, citing concerns about the safety of his friends and family with whom he was staying.  When asked on redirect-examination why he wouldn't answer the questions, Henderson elaborated, "For the protection of my friends, my family, my coworkers.  We are dealing with a person that's affiliated with . . . ."  Henderson was interrupted by the judge and prosecutor before he could complete the

answer.  Later he explained, "Since this incident, I've been jumped, because of this I had people threaten my life.  I had - I've had a couple of incidents where I've gotten into fights. . . .  I got kicked out of my place because somebody broke my windows . . . .  And to be honest, I'm at a point to, I don't really give a shit, made me want to testify more because it just shows me that this person or whoever this person knows, they don't have any remorse for what they did to me."  On recross-examination, Henderson blamed a couple of fights on defendant's "friends that he has that he's associated with that I cannot bring up in court."  At this point the court briefly warned defendant's attorney, "If you don't stop in this area, . . . it's going to be brought up."  A few moments later, when the defense attorney was questioning Henderson about the incident in which his window had been broken, Henderson interrupted him stating, "If you want to discuss this situation further, you going to ask me to bring up something that you don't want me to."  The court took a brief recess and out of the jury's presence explained on the record, "Mr. Henderson has been ordered not to say anything about the gang involvement.  And he's come very close, but he's remembered that he's not to discuss it. [¶]  And I warned [defendant's attorney] that if you keep pushing in that area, it's going to come up.  If it comes up . . . I'm not going to throw this case out or anything because it came up because I have warned you to stay away from that area and you keep asking about these friends and it's going to pop out and it's going to happen.  So this is just a warning."  At no time did the defendant enter an objection to any of the above testimony by Henderson as violating the court's pretrial order, nor does he identify a posttrial motion in which the issue was raised.

Exh. F at 6-7.

On appeal, Romero, citing authority that gang evidence is highly inflammatory in cases where gang membership or association is irrelevant, argued he was deprived his due process right to a fundamentally fair trial because Henderson's testimony would have conveyed to a reasonable juror that Romero was a gang member.

The court of appeal rejected this claim, finding as follows:

"The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." [Citation.]  Gang evidence is not admissible if introduced only to "show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the charged offense."  [Citations.]  However, such evidence is admissible if it is relevant to issues in the case, is not more prejudicial than probative, and is not cumulative.  [Citations.]  Even if gang evidence is relevant, it may have a highly inflammatory impact on the jury.  Thus, "trial courts should carefully scrutinize such evidence before admitting it."  [Citations.]  A trial court's admission of evidence, including evidence related to a defendant's gang membership, is reviewed for abuse of discretion.  [Citations.]

Contrary to defendant's argument, Henderson's testimony did not deprive defendant of a fair trial.  It is doubtful that Henderson's testimony reasonably imputed gang membership to the defendant.  The trial court did not believe that Henderson had violated its pretrial order.  The disputed testimony was so oblique that, at most, it might have raised a question in the minds of the jurors and was not likely to have inflamed a prejudice against defendant because of the speculative possibility that he had some connection with a gang or gang members.

10

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[¶]In any event, even assuming such an inference might be drawn from Henderson's testimony, the admission of this limited evidence was not an abuse of discretion. The defense attorney's questions on cross-examination opened the door to a limited exploration of the reason why Henderson was unwilling to reveal where his friends and family worked and lived. Once those questions were asked, evidence explaining why Henderson was concerned about the safety of his friends and family became more probative. As the probative value of evidence increased, the trial court allowed the attorneys a reasonable degree of leeway in examining the witness. [Citations.] As the court noted, Henderson's testimony never reached the point where he violated the court's order. We find no error in this regard.

Exh. F at 7-8 (footnote omitted).

2.  Analysis

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. See Henry, 197 F.3d at 1031. Instead, as noted, the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Id. That the admission of evidence could lead the jury to draw an impermissible inference is not sufficient to establish prejudice; instead, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

Here, the court of appeal found that admission of the contested evidence did not deprive Romero of a fair trial because "[i]t is doubtful that Henderson's testimony reasonably imputed gang membership" to Romero. Exh. F at 7. Having reviewed the relevant portions of the trial record, this court agrees. In particular, the record shows that Henderson never stated that Romero was a gang member, or that he was afraid to testify because of possible gang retaliation. Rather, Henderson, citing "safety reasons," RT 225:21-22, his desire "not to discuss that right now," RT 227:16, and his preference "not [to] release that information due to the safety of my friends and family," RT 263:15-16, refused to answer questions asking him to identify certain individuals and their whereabouts. Additionally, on redirect examination, he explained, without any reference to gang activity, how the "G code," i.e., the code of the streets, influenced his behavior, including his decision not to report the carjacking to the police:

A:    I'm from the streets. To live in the streets, there's certain rules that you have to

**United States District Court**
For the Northern District of California

practice.  Bring things to the police authority is a no no.

Q:      Why?

A:      Because it will get you killed.

* * *

Q:      [ ]What does the G code have to do with anything about not wanting to cooperate with the police?

A:      A G code consists of several different characters.  One, you don't snitch; two, you don't fuck with your homeboy's girl; three, you don't shit in your own backyard.  There are a lot of different G codes that you have to keep to the streets if you're going to survive in the streets.

RT 272:9-18; 272:23-273:8 (internal questions omitted).

Based on this record, a reasonable juror could draw the permissible inference that Henderson's statements that he was afraid of retribution by Romero and his friends referred to his fear that they would enforce the G code against him because he had decided to testify against Romero.  Further, even if the jury inferred that Henderson was afraid because he believed Romero was affiliated with a gang, that evidence permissibly could be used by the jury to find that he was a credible witness, because he chose to testify despite his fears.[2]

Finally, admission of the evidence did not have a substantial and injurious effect on the jury's verdict because, even without Henderson's references, the jury reasonably could have concluded that Romero was guilty, based on the evidence connecting him to the crime and his own testimony regarding his criminal activities.

For the foregoing reasons, the court finds that the state court's rejection of Romero's challenge to the admission of Henderson's testimony was not contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).  Accordingly, Romero is not entitled to habeas relief on this claim.

//

C.      <u>Admission of Evidence of Prior Auto Theft Conviction</u>

---

[2] Under California law, a witness's fear of retribution for testifying is relevant to establish the witness's credibility.  <u>See</u> <u>People v. Olguin</u>, 31 Cal. App. 4th 1355, 1368 (1994) ("A witness who testified despite fear of recrimination of any kind by anyone is more credible because of his or her personal stake in the testimony.")

Romero claims he was denied his right to a fair trial when the trial court allowed the prosecution to enter into evidence, for impeachment purposes, the fact of Romero's prior conviction for auto theft.

### 1.   Background

During pretrial proceedings, the prosecutor moved to admit Romero's prior felony convictions if relevant to impeach him. One of those prior convictions was for auto theft, in violation of California Vehicle Code section 10851. Defense counsel agreed the conviction had impeachment value, but objected to the jury being told it was for auto theft because that information was more prejudicial than probative, in view of the carjacking charge. The trial court ruled the prosecutor would be allowed to ask Romero whether he had been convicted of auto theft. RT 24:24-27.

During trial, the prosecutor sought to impeach Romero with the conviction. Again, defense counsel argued that telling the jury the conviction was for auto theft was unduly prejudicial. The trial court found the conviction admissible because it "involve[s] moral turpitude and is relevant to his credibility." RT 525:15-16. Additionally, the court explained that it did not think the evidence was more prejudicial than probative because of Henderson's testimony that he and Romero "were riding around talking about their licks and [Romero's] licks they said was carjacking." RT 525:16-19.

On direct examination of Romero, defense counsel asked whether he had been convicted previously of a violation of California Health and Safety Code section 11360, the sale of marijuana, and "of a violation of Vehicle Code section 10851, which is basically auto theft . . . ." Romero answered "yes" to both questions. RT 615: 2-9. Subsequently, the prosecutor, when cross-examining Romero, asked whether he had been convicted "of a felony violation of Section 10851 of the Vehicle Code, auto theft," to which Romero responded, "Yes." RT 672:23-26. The prosecutor then asked: "And auto theft is basically stealing a car that doesn't belong to you, right?" Romero again responded in the affirmative. RT 673:9-11. No mention of the auto theft conviction was made by the prosecutor during closing argument.

When instructing the jury, the trial court read CALJIC 2.20 - Believability of a Witness,

which provides that when determining the believability of a witness the jury may consider "anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including . . . [t]he witness' prior conviction of a felony . . . ." RT 795:5-796:3.

On appeal, Romero argued the trial court should have excluded, under Evidence Code section 352, the prosecutor's use of the prior conviction for auto theft, because the evidence was more prejudicial than probative. He further argued that even if the prior conviction was admissible to impeach his credibility, it should have been sanitized and described for the jury as "grand theft," without naming the item stolen.

The court of appeal rejected Romero's argument, finding as follows:

> Evidence of a prior conviction of a crime of moral turpitude is relevant to a witnesses' honesty and veracity. [Citation.] Admission of such evidence, however, is subject to the trial court's discretion to exclude it under Evidence Code section 352. As noted above, a trial court's broad latitude in this respect will not be upset on appeal absent a showing of abuse of discretion. [Citation.] The evidence that defendant had a relatively recent theft conviction was relevant to defendant's credibility and, thus, the court did not abuse its discretion in admitting it. [Citation.] (["Prior convictions for the identical offense are not automatically excluded. 'The identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion'"].) Likewise, the trial court did not abuse its discretion in describing the prior conviction as an "auto theft." Defendant did not object to the description and the trial court had no obligation to sanitize the name of the offense absent a request by defendant. [Citation.]

Exh. F at 9.

2.   <u>Analysis</u>

Permitting a jury to hear evidence of prior crimes or bad acts may violate due process. <u>See</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438-39 n.6 (1983); <u>Fritchie v. McCarthy</u>, 664 F.2d 208, 212 (9th Cir. 1981). However, the admission of other crimes evidence violates due process only if it was so arbitrary or prejudicial that it rendered the trial fundamentally unfair, or there were no permissible inferences the jury could draw from the evidence, i.e., no inference other than conduct in conformity therewith. <u>See</u> <u>McKinney v. Rees</u>, 993 F.2d 1378, 1384 (9th Cir. 1993).

The court finds no merit to Romero's argument that the prior conviction should not have been admitted to impeach him. It is well-recognized that evidence of prior convictions is

United States District Court
For the Northern District of California

admissible where the defendant has testified and the state seeks to impeach his credibility. <u>See</u> <u>Spencer v. Texas</u>, 385 U.S. 554, 652 (1967). Further, in this case, the jury was instructed that evidence of a prior felony conviction is relevant to a witness's credibility, and, consequently, it could have drawn the permissible inference that Romero was not credible because of the prior auto theft conviction.

Romero's contention that use of the term "auto theft" was unduly prejudicial also is unpersuasive because it is clear from the trial record that the prosecution's theory was not simply that Romero stole Henderson's van, but, rather, that Romero, who was angry that Henderson had not given him the speakers he believed he was owed, sought Henderson out, shot him, and stole his vehicle. This theory was emphasized during closing argument when the prosecutor argued to the jury that all of the elements of carjacking had been met because the evidence showed that the vehicle had been taken from Henderson's "person or immediate presence," "against his will" and "by means of force or fear." RT 732:14-26.

Additionally, admission of the prior auto theft conviction did not render the trial fundamentally unfair because, even if that evidence had been excluded or the nature of the conviction had been sanitized, the jury had before it substantial evidence from which the inference could be drawn that Romero was not credible. Specifically, Romero testified that he had a prior conviction for the sale of marijuana, he had previously given a false name to the police, he had been incarcerated as a juvenile and jailed on other occasions as an adult, and he had intentionally failed to pay for the drugs he received from Henderson.

In view of this record, it is not reasonably probable that the fact of Romero's prior conviction for auto theft had a substantial and injurious effect on the jury's verdict. Accordingly, the court of appeal's rejection of this claim was not contrary to, or based on an unreasonable application of, clearly established federal law, and Romero is not entitled to habeas relief on this claim.

//

//

15

D.    Ineffective Assistance of Counsel

Romero argues that defense counsel's failure to object to several instances of prosecutorial misconduct denied him the effective assistance of counsel.

1.    Background

On appeal, Romero argued that his counsel provided ineffective assistance by not objecting to statements made by the prosecutor during closing argument  which  (1) indicated she had personal knowledge of Romero's guilt; (2) accused defense counsel of soliciting perjury or fabricating a defense; and (3) improperly emphasized that the maroon Honda had been reported stolen before the date of the carjacking.

> The court of appeal rejected Romero's claim, applying the following legal standard: Defendant contends that his attorney's failure to object to alleged prosecutorial misconduct during closing argument denied him effective assistance of counsel.  "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  [Citations.]  Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  (People v. Benavides (2005) 35 Cal.4th 69, 92-93.)

Exh.  F at 10.

Each of Romero's contentions is discussed below.

2.    Analysis

Under the Sixth Amendment, a defendant is guaranteed the effective assistance, of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a defendant must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

United States District Court
For the Northern District of California

16

**United States District Court**
For the Northern District of California

1  unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

2  reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id

3     A prosecutor's remarks violate due process only if they were improper and also infected

4  the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  "[T]he

5  touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness

6  of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).

8          a.     Prosecutor's Personal Knowledge of Guilt

9     Romero maintains that the prosecutor committed misconduct when, during closing

10  argument, she stated that Romero had lied when testifying.  The court of appeal denied this

11  claim, as follows:

12          Defendant claims that the prosecutor committed misconduct during closing
     argument and that his attorney was ineffective in failing to object.  First, he asserts that
13   the prosecutor relied improperly on her personal knowledge when she argued, "It may
     come a shock to all of you, but those of us who work in this courtroom every single day,
14   people every day sit in that chair and promise to tell the truth [but] lie.  And that's exactly
     what happened when the defendant last week sat in that chair under oath and told you his
15   story."  Later she reiterated, "[defendant] lied to all of you to your face" and claimed that
     defendant's lies "disrespected [the] court."  A prosecutor's statement that he or she has
16   personal knowledge of facts not in evidence or of defendant's guilt is misconduct.
     (People v. Monterroso (2004) 34 Cal.4th 743, 785.)  The prosecutor's comments in this
17   case, however, do not imply any personal knowledge with respect to defendant's guilt.
     The prosecutor detailed the evidence that supported her argument that defendant was
18   lying.  To the extent that the comments infer special knowledge about what happens in
     a courtroom, the comments are general and collateral to the issues on trial.  There was
19   neither misconduct nor a likelihood of prejudice.

20  Exh. F at 10.

21     It is not proper for a prosecutor to voice doubt about the veracity of a defendant who

22  testifies, particularly in instances of flatly contradictory testimony.  United States v. Moreland,

23  604 F.3d 1058, 1072 (9th Cir. 2010).  Nevertheless, the prosecutor may refer to the defendant

24  as a "liar" as long as she is simply asking the jury to make such an inference from the evidence.

25  See id. at 1072-73 (finding repeated references to defendant as "liar" not misconduct because

26  prosecutor was commenting on specific inconsistencies in the evidence presented).

27     The court has reviewed the record in this case and agrees with the court of appeal that the

28  prosecutor's references to Romero as a liar did not imply that she had special knowledge about

Romero's guilt or veracity; rather, they reflected her interpretation of the evidence that had been presented to the jury. Because the prosecutor's statements did not amount to misconduct, Romero's counsel was not deficient for failing to object.

b.    Attacking Counsel's Veracity

Romero's second contention is that defense counsel did not provide effective assistance because he did not object to statements by the prosecutor which implied that defense counsel had asked Romero to perjure himself or fabricate a defense. The court of appeal rejected this argument, as follows:

> Defendant argues that his attorney should have objected to the following comment about his defense: "It's all made up after he actually heard Mr. Henderson testify in this case and heard how he could mold his story to fit with the evidence in this case to save him." Contrary to defendant's suggestion, nothing in this comment accuses defense counsel of "soliciting perjury" or "fabricating a defense." It properly accuses the defendant of molding his testimony to respond to the trial testimony. There was no basis on which to make an objection.

Exh. F at 11.

A prosecutor may not gratuitously attack a defendant's choice of counsel or defense counsel's integrity and veracity. See Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983) Nor may the prosecutor attack defense counsel's legitimate trial tactics. See United States v. Frederick, 78 F.3d 1370, 1379-80 (9th Cir. 1996). Here, the court of appeal reasonably concluded that the prosecutor's statement did not call into question the veracity and integrity of Romero's defense counsel, but, instead, properly depicted her assessment of Romero's testimony. Because there was no basis on which defense counsel should have objected to the statement, his failure to do so was not deficient performance.

c.    Improper Emphasis

Romero's third contention is that the prosecutor improperly made numerous references to the fact that the maroon Honda had been reported stolen.

The court of appeal rejected this argument, as follows:

> Finally, defendant argues that the prosecutor relied on the evidence that the Honda

United States District Court
For the Northern District of California

had been reported stolen for an improper purpose.  The prosecutor asked the jury, "Is it a mere coincidence that on March 10, 2006, at 2 o'clock p.m. the defendant had access to a Silver Toyota and stolen maroon Honda?  Is it a mere coincidence that Mr. Henderson describes a burgundy Honda and silver car possibly being involved in a carjacking in his 911 call in statement to Officer Silva?  Is it a mere coincidence that on March 10, 2006, five days after Mr. Henderson was carjacked, the defendant is driving a reported stolen maroon Honda?"  While the references to the Honda having been reported stolen were perhaps unwarranted, nothing in the above argument is so "deceptive or reprehensible" as to amount to misconduct.  (<u>People v. Morales</u> (2001) 25 Cal.4th 34, 44 ["Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury"] .)  Nor is it likely that defendant was prejudiced by the prosecutor's comments.  The focus of her argument was that the car in which defendant was riding was maroon, the same color as the car described by Henderson, not that the car was stolen.  Accordingly, we reject defendant's argument that he received ineffective assistance of counsel based on his attorney's failure to object to the above comments made during closing arguments.

Exh. F at 11 (footnote omitted).

Prosecutorial comment must be examined in context.  <u>See</u> <u>Williams v. Borg</u>, 139 F.3d 737, 745 (9th Cir. 1998).  "A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations." <u>Id.</u> at 744.

Here, the prosecutor's comments, when examined in the context of the entire trial record, were not prejudicial.  Neither during trial nor closing argument did the prosecutor focus on whether Romero had stolen, or otherwise unlawfully obtained, the Honda.  Rather, as discussed previously, evidence that the Honda had been reported stolen was admitted for the purpose of showing why Officer Kelly had arrested Romero, and to connect Romero's possession of the Honda to the carjacking.  Further, even if the jury inferred that Romero obtained the Honda unlawfully, there is no reasonable probability that the outcome of the trial would have been different, because the jury also knew that Romero had been arrested by Kelly for a crime other than the carjacking, he had a prior conviction for auto theft, and he had intentionally failed to pay for the drugs he received from Henderson.  Accordingly, the court of appeal reasonably concluded that defense counsel's failure to object to the prosecutor's comments did not amount to ineffective assistance of counsel.

19

**United States District Court**
For the Northern District of California

1    For the foregoing reasons, Romero is not entitled to habeas relief on his claim of

2    ineffective assistance of counsel.

3

4    E.    Cumulative Error

5    Romero claims he is entitled to habeas relief based on the cumulative effect of the

6    evidentiary errors and the instances of ineffective assistance of counsel discussed above.

7    Where no single trial error is sufficiently prejudicial to warrant the granting of relief, the

8    cumulative effect of several errors may still prejudice a defendant so much that his conviction

9    must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir. 2003).  However,

10   where no single constitutional error exists, there can be no cumulative error.  See Mancuso v.

11   Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

12   Romero has not shown that there were any constitutional errors at his trial.  Therefore,

13   the court concludes that Romero has not shown that there was cumulative error.

14   Accordingly, Romero is not entitled to habeas relief on this claim.

15

16   F.    Sentencing Error

17   Romero claims that the trial court's imposition of the upper term of nine years for the

18   carjacking offense implicates ex post facto concerns because he committed the crime in 2006,

19   but was sentenced under procedures created by the California Supreme Court in 2007.  Under

20   the sentencing procedures in effect in 2006, Romero would presumptively have been entitled

21   to imposition of the middle term for the carjacking offense.

22   The California Court of Appeal rejected Romero's claim, citing the California Supreme

23   Court's opinion in People v. Sandoval, 41 Cal.4th 825 (2007).  Exh. F at 15 n.6.

24   The United States Constitution prohibits the federal government and the states from

25   passing any "ex post facto Law."  U.S. Const., Art. I, §  9, cl. 3 (federal government); Art. I,

26   § 10, cl. 1 (states).  This means that no greater punishment may be inflicted for a crime than the

27   punishment authorized by law when the crime was committed.  See Stogner v. California, 539

28   U.S. 607, 611-12 (2003).  An ex post facto challenge does not focus on whether a legislative

United States District Court
For the Northern District of California

change produces "some ambiguous sort of 'disadvantage,'" but, rather, "whether any such change increases the penalty by which a crime is punishable." Garner v. Jones, 529 U.S. 244, 255 (2000). There is no ex post facto violation where the new law "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995).

In People v. Sandoval, the California Supreme Court delineated the procedure for cases remanded to the trial court for resentencing because of a violation of Cunningham v. California, 549 U.S. 270 (2007).[3] Specifically, Sandoval eliminated the presumption of a middle-term sentence and gave the trial court the discretion to impose the upper term on remand without a jury trial or factual findings. Id. at 843-45. The Sandoval court concluded that the resentencing procedure did not raise ex post facto concerns "because the prohibition on ex post facto laws applies only to statutory enactments, not to judicial decisions." Id. at 855. The Ninth Circuit has similarly found that the prohibition on ex post facto laws is not violated if the procedures established in Sandoval are followed. See Chioino v. Kernan, 581 F.3d 1182, 1185 (9th Cir. 2009) ("[N]o ex post facto concerns are generated by remanding for resentencing for a Cunningham violation if the sentencing court follows the California Supreme Court's instructions in Sandoval." ); Butler v. Curry, 528 F.3d 624, 652 n.20 (9th Cir. 2008).

Here, Romero does not claim that the Sandoval procedures were not followed in his case.

Accordingly, because his claim does not implicate ex post facto concerns, he is not entitled to habeas relief.

//

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment

---

[3] In Cunningham, the United States Supreme Court held that California's determinate sentencing law violated the Sixth Amendment because it authorized the judge, not the jury, to find the facts permitting an upper term sentence. 549 U.S. at 273.

of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Romero may seek a certificate of appealability from the Ninth Circuit Court of Appeals.  The clerk shall enter judgment in favor of respondent, and close the file.

      IT IS SO ORDERED.

Dated: July 9, 2012

                                      SUSAN ILLSTON
                          United States District Judge

**United States District Court**
For the Northern District of California

22